BANCROFT v. EMERSON-BRANTINGHAM IMPLEMENT CO. (No. 192.)

(Court of Civil Appeals of Texas. Beaumont. April 28, 1917. Rehearing Denied May 16, 1917.)

1. SALES ⊜126(1), 179(4) — ACCEPTANCE — TIME FOR RETURNING GOODS.

Where buyer retained a tractor nearly three years after knowing it was unsatisfactory, and that the seller would make no further repairs, he cannot rescind the contract or avoid paying the purchase price.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 313, 315, 460–463.]

2. APPEAL AND ERROR ⊜265(1)—FINDINGS—CONCLUSIVENESS.

A finding of fact not excepted to is conclusive upon appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1536, 1538, 1543–1551.]

Appeal from District Court, Orange County; A. E. Davis, Judge.

Action by the Emerson-Brantingham Implement Company against E. W. Bancroft. Judgment for plaintiff, and defendant appeals. Affirmed.

Bisland & Bruce, of Orange, for appellant. Spence & Haven, of Dallas, for appellee.

BROOKE, J. The plaintiff, Emerson-Brantingham Implement Company, instituted this suit in the district court of Orange county against the defendant, E. W. Bancroft, and alleged in substance that on the 1st day of October, 1912, Reeves & Co., of Columbus, Ind., sold to defendant, Bancroft, one Reeves 40 gasoline tractor, together with regular equipment, at the contract price of $3,025, allowing to defendant, Bancroft, a cash discount of $181.50, leaving a total balance due, as purchase price, the sum of $2,843.50, which said amount was to be paid by the defendant,

Bancroft, to Reeves & Co., as follows: $600 cash, and the sum of $2,243.50 when the defendant, Bancroft, was satisfied that the engine would successfully pull six 16-inch plows 6 inches deep in sod and nine 16-inch plows 3 inches deep in rice stubble; the test to be made on defendant's farm, and to be determined in six days of favorable plow weather. Plaintiff further alleged that said contract and claim against the defendant, Bancroft, was, for a valuable consideration, transferred, assigned, and delivered by Reeves & Co. to the plaintiff, Emerson-Brantingham Implement Company. It was further alleged that the defendant, Bancroft, paid the sum of $600 cash when the machinery was delivered to the defendant, and accepted said machinery when the same was delivered, and had, since the date the same was delivered to him, retained, used, and operated said machinery for threshing, plowing, disking, and other purposes. Plaintiff alleged further that both Reeves & Co., and the plaintiff had fulfilled the contract of sale on their part, in delivering said machinery to the defendant, Bancroft. It was further alleged that the defendant had retained and used said machinery for a period of two years and seven months, and that said time was an unreasonable time to retain, operate, and use said machinery without paying therefor; and that defendant, having had a reasonable time in which to test said machinery, and having retained said machinery and having used said machinery as his own, and having exercised the right of ownership over the same, that he thereby became liable to the plaintiff for the purchase price thereof. The further allegation is made that the sum of $181.50 allowed to the defendant as a cash discount was allowed upon the express consideration that defendant would pay cash for said machinery, and the defendant having failed and refused to pay for said machinery in accordance with the terms and conditions of the contract of sale, thereby forfeited said cash discount, and was not entitled to receive said cash discount in the sum stated. Plaintiff asked judgment against the defendant for the sum of $2,425, together with interest thereon.

Defendant pleaded a general demurrer and a general denial, and then alleged that the amount of $2,243.50 to be paid by the defendant to the plaintiff was not to be paid until the defendant was satisfied that the engine would successfully pull six 16-inch plows 6 inches deep in sod and nine 16-inch plows 3 inches deep in rice stubble, said test to be made on defendant's farm, and to terminate in six days of favorable plow weather, and that defendant had never been satisfied that said engine would successfully pull six 16-inch plows 6 inches deep in sod and nine 16-inch plows 3 inches deep in rice stubble on his farm, and denied the right of plaintiff to recover until he was so satisfied. By par-

agraphs 4 and 5 of defendant's original answer he sought to recover certain sums of money by way of cross-action against the plaintiff, but said allegations were abandoned by the defendant on the trial of the case, and further reference to the same will therefore be unnecessary.

A jury was waived and the case was tried before the court, and judgment rendered in favor of appellee, Emerson-Brantingham Implement Company, against the defendant, E. W. Bancroft, for the sum of $2,425. Defendant's motion for a new trial was overruled, to which defendant excepted, and gave notice of appeal to this court. The machinery sold to the defendant was sold under the provisions of a written order as follows:

"Orange, Texas, Oct. 1, 1912.

"Reeves & Co. (Inc.) Columbus, Indiana: You will please ship for the undersigned purchasers at Bancroft station, in care of Reeves & Co., agent at Oklahoma City, Okla., by the route you think best and cheapest, if possible, on or about October 3, 1912, the following described machinery, with appurtenances, viz.:

| [Here follows a description of property] | $3,025.00 |
| Cash discount | 181.50 |
| Total | $2,843.50 |

"Where, in consideration thereof, I or we agree to receive the same, pay the freight and charges from Columbus, Indiana, and at the same time settle for said machinery in cash or notes in the sum of two thousand eight hundred forty-three and 50-100 dollars, as follows: Cash on delivery of the engine at Orange, Texas; $600.00 made payable at the Orange National Bank—Bank in Orange, Texas; ($2,243.50) two thousand two hundred forty-three and 50-100 dollars to be paid when satisfied that engine will successfully pull six sixteen-inch plows six inches deep in sod and nine sixteen-inch plows three inches deep in rice stubble, said test to be terminated within six days of favorable plow weather, on Mr. Bancroft's farm. P. O. Orange, Texas.

"[Signed] E. W. Bancroft."

The court, at request of defendant, filed its findings of fact and conclusions of law, to which there was no exception taken by defendant, said findings being as follows:

"May 12, 1916.

"The court having been requested to file conclusions of fact and law in the above numbered and entitled cause, finds the following:

"Facts.

"(1) On the 1st day of October, Reeves & Co. sold to the defendant, E. W. Bancroft, one Reeves 40 gasoline tractor, with regular equipment and 12-inch extensions for drive wheels, and 4-inch extensions for front wheels, for which E. W. Bancroft agreed to pay the sum of $3,025, less a cash discount of $181.50, leaving a total amount for which he was to pay for said machinery the sum of $2,843.50. Said sum of money was to be paid as follows: $600 cash when said machinery was delivered at the station Bancroft in Orange county, Tex., and the balance of $2,243.50 to be paid when E. W. Bancroft was satisfied that said engine would successfully pull six 16-inch plows 6 inches deep in sod and nine 16-inch plows 3 inches deep in rice stubble, test to be made on E. W. Bancroft's farm, and to terminate in six days of favorable plow weather; said contract of sale being evidenced by writing, signed by E. W. Bancroft.

"(2) The machinery described in the first finding was shipped by Reeves & Co. to E. W. Bancroft and arrived at Bancroft station, in Orange county, Tex., about the 1st day of November, 1912, and was immediately unloaded from the cars and removed to the E. W. Bancroft farm, a short distance from Bancroft station.

"(3) I find that by indorsement on said contract Reeves & Co. transferred all of its right, title and interest in and to the balance due on said machinery and assigned the contract evidencing said balance, for a valuable consideration, to Emerson-Brantingham Implement Company, plaintiff in this case.

"(4) I find that Reeves & Co. was a foreign corporation incorporated under the laws of the state of Indiana, and had a permit issued to it on the 3d day of March, 1904, in accordance with the requirements of the laws of the state of Texas, authorizing it to transact business in the state of Texas as a foreign corporation, and that said permit was to run for a term of ten years, ending on the 1st day of May, 1913.

"(5) I find that the plaintiff, Emerson-Brantingham Implement Company, is a foreign corporation, incorporated under the laws of the state of Illinois, and that it had a permit issued to it on the 18th day of November, 1912, in accordance with the requirements of the laws of the state of Texas, authorizing it to transact business in the state of Texas, and that said permit was to run for a term of ten years, until, to wit, the 18th day of November, 1922.

"(6) I find that either Reeves & Co. or Emerson-Brantingham Implement Company had representatives from its factory at the station of Bancroft when said machinery arrived, who assisted in unloading said machinery and in taking the same to the farm of the defendant, and that said expert remained with the machinery for several days in operating and in attempting to make said machinery operate on the farm of the defendant.

"(7) I find that after the machinery had been on the farm of the defendant nine days that said machinery had not, to the satisfaction of the defendant, successfully pulled six 16-inch plows 6 inches deep in sod and nine 16-inch plows 3 inches deep in rice stubble.

"(8) I find that on November 8, 1912, the defendant E. W. Bancroft, by letter notified Emerson-Brantingham Implement Company, the plaintiff, that he was not satisfied that said engine would successfully pull six 16-inch plows 6 inches deep in sod and nine 16-inch plows 3 inches deep in rice stubble.

"(9) I find that from the date said machinery was unloaded until the month of July, 1913, that the plaintiff, Emerson-Brantingham Implement Company, sent four different experts, two of whom made two separate visits to see Mr. Bancroft with reference to said machinery, and to see if they could not repair said machinery so that said machinery would, to the satisfaction of E. W. Bancroft, successfully pull six 16-inch plows 6 inches deep in sod and nine 16-inch plows 3 inches deep in rice stubble.

"(10) I find that after all of said experts had visited E. W. Bancroft with reference to said machinery, that the said machinery would not successfully pull six 16-inch plows 6 inches deep in sod and nine 16-inch plows 3 inches deep in rice stubble, to the satisfaction of E. W. Bancroft.

"(11) I find that E. W. Bancroft was satisfied in July, 1913, that said engine would not successfully pull six 16-inch plows 6 inches deep in sod and nine 16-inch plows 3 inches deep in rice stubble, on the Bancroft farm in Orange county, Tex.

"(12) I find that neither the Emerson-Brantingham Implement Company nor Reeves & Co., after July, 1913, further attempted in any way to remedy said machinery or in any way make it, to the satisfaction of E. W. Bancroft, successfully pull six 16-inch plows 6 inches deep in sod and nine 16-inch plows 3 inches deep in rice stubble on the Bancroft farm.

"(13) I find that after E. W. Bancroft, in July, 1913, learned and was satisfied that said engine would not successfully pull six 16-inch plows 6 inches deep in sod and nine 16-inch plows 3 inches deep in rice stubble, on his [Bancroft's] farm, and that he knew that both Reeves & Co. and Emerson-Brantingham Implement Company had abandoned all further efforts to make said machinery so perform, that he (E. W. Bancroft) used said machinery in the fall of the year 1913, and in the spring of the year 1914, and in the fall of the year 1914, and in the spring of the year 1915, and in the fall of the year 1915, in disking ground and in threshing his rice crops.

"(14) I find that neither Emerson-Brantingham Implement Company nor Reeves & Co. ever consented that E. W. Bancroft could use said machinery for any purpose than the test to which he was to subject said machinery before he was to make final payment therefor, and that the use of said machinery by E. W. Bancroft in threshing his rice crops and in disking his lands was without the consent of either Reeves & Co. or Emerson-Brantingham Implement Company.

"(15) I find that the said machinery is not worthless, but that the reasonable cash market value of said machinery at this time is the sum of $1,000, and that said machinery has been on the E. W. Bancroft farm in Orange county, Tex., since November, 1912, where it was unloaded off of the cars this day, and the cash market value of said machinery at said place has never been less than the amount of $1,000 from that date to this.

"(16) I find that there have been more than six days of favorable plow weather at the Bancroft farm in Orange county, Tex., since said machinery was delivered thereon, about the 1st of November, 1912, and that said E. W. Bancroft has retained said machinery for a longer period than a reasonable time in which said E. W. Bancroft was to test said machinery to the end that he might be satisfied that the same would successfully pull six 16-inch plows 6 inches deep in sod and nine 16-inch plows 3 inches deep in rice stubble.

"(17) I further find that after a reasonable time had elapsed in which the said E. W. Bancroft could have tested said machinery to his satisfaction to see if the same would successfully pull six 16-inch plows 6 inches deep in sod and nine 16-inch plows 3 inches deep in rice stubble; that thereafter he continued to use said machinery in threshing his rice and in disking his land.

"(18) I find that E. W. Bancroft paid to the plaintiff $600 when said machinery was delivered at Bancroft station on or about November 1, 1912.

"(19) I find that the defendant, E. W. Bancroft, has not paid the $2,243.50, which was to be paid when the said E. W. Bancroft was satisfied that the engine would successfully pull six 16-inch plows 6 inches deep in sod and nine 16-inch plows 3 inches deep in rice stubble.

"(20) I find that when payment for machinery of this character is made within thirty days after the delivery that a cash discount will be allowed to the purchaser, and that the parties to the sale in this case mutually agreed and understood that the contract price should be $3,025, but that the said E. W. Bancroft should receive a cash discount of $181.50, because the parties mutually understood and agreed that all of the purchase price for said machinery would be paid within thirty days from date of delivery.

"(21) I find that said purchase price of $3,-025 was not paid by E. W. Bancroft within thirty days from day of the delivery of said

machinery, and that all of said purchase price has not been paid to this date.

## "Conclusions of Law.

"I conclude as a matter of law that when the defendant, E. W. Bancroft, was satisfied in July, 1913, that said engine would not successfully pull six 16-inch plows 6 inches deep in sod and nine 16-inch plows 3 inches deep in rice stubble, on his [Bancroft's] farm, located in Orange county, Tex., that he could have refused to accept said machinery and could have recovered the $600 paid to plaintiff therefor, together with all freight which he had paid thereon, but that he could not after that time continue to use said property to thresh his rice and disk his lands, because such use was utterly inconsistent with the right of rescission or with the right of subjecting said machinery to said test. I further conclude that when E. W. Bancroft became satisfied in July, 1913, that said engine would not successfully pull six 16-inch plows 6 inches deep in sod and nine 16-inch plows 3 inches deep in rice stubble, on his [Bancroft's] farm, in Orange county, Tex., and thereafter, in the fall of 1913, and in the spring of 1914, and in the fall of 1914, and in the spring of 1915, and in the fall of 1915, when he used said machinery to disk his lands and thresh his rice crops, that said use of said machinery on his part evidenced a right of proprietorship or ownership over said machinery, and was utterly inconsistent with his right to reject said machinery, and that having so used said machinery and having exercised the right of ownership and proprietorship over said machinery he is bound to pay therefor.

"I further conclude that the defendant, E. W. Bancroft, is not entitled to the cash discount of $181.50, and that plaintiff, Emerson-Brantingham Implement Company, is therefore entitled to recover from the defendant, E. W. Bancroft, the sum of $2,243.50, together with the additional sum of $181.50, making a total in the sum of $2,425, which the plaintiff, Emerson-Brantingham Implement Company, should recover against the defendant, E. W. Bancroft."

It seems to have been conceded by the defendant, in the trial court, that his cross-action for damages in the sum of $2,000 was not well taken, and that he was not entitled to recover thereon, and therefore no exception was taken to the court's refusing a recovery on said cross-action. It also seems to have been conceded by the defendant in the trial court that the sum of $425, which he claimed for repairs to the machinery, could not be recovered in this case against plaintiff for the reason that the evidence failed to show that the plaintiff had contracted and legally bound itself to reimburse defendant for said repairs, and therefore no exception was taken to the court's refusal to grant him judgment for said sum, and in addition to this it seems to have been conceded also by defendant in the trial court that he did not take advantage of the cash discount provided in the order of sale in the sum of $181.50, and that if plaintiff was entitled to recover against him at all, that then the plaintiff should recover the sum of $2,243.50, together with the additional sum of $181.50, allowed as a cash discount, making the total amount that plaintiff should recover the sum of $2,425.

[1] Appellant's first assignment of error is as follows:

"The court erred in holding as a matter of law that the use by defendant of the machinery for any purpose, and particularly for the purpose of disking and threshing, was in effect an acceptance by defendant of said machinery for all purposes, and equivalent to defendant's becoming satisfied that the machinery would plow as specified."

The proposition under this assignment is:

"The use, by purchaser, of machinery bought on approval, such machinery to be paid for when purchaser is satisfied after a test that it will do certain things, is not equivalent to an acceptance thereof, and does not constitute, of itself, purchaser's satisfaction."

The counter proposition is:

"Where a vendee of machinery purchased on trial, after a trial is dissatisfied with the machinery, and the vendor has abandoned all efforts to make the machinery satisfactory to the vendee, without the consent of the vendor, uses the machinery for more than two years, the vendor may recover the purchase price of said machinery from the vendee, and the vendee cannot be heard to say that he has not accepted the machinery, because the long-continued use of the machinery by the vendee is utterly inconsistent with the right of rejection, and consistent only with the claim of title and ownership."

With reference to this matter, an inspection of the record will show that the thirteenth paragraph of the court's findings is as follows:

"I find that after E. W. Bancroft, in July, 1913, learned and was satisfied that said engine would not successfully pull six 16-inch plows 6 inches deep in sod and nine 16-inch plows 3 inches deep in rice stubble, on his [Bancroft's] farm, that he knew that both Reeves & Co. and Emerson-Brantingham Implement Company had abandoned all further efforts to make said machinery so perform; that he (E. W. Bancroft) used said machinery in the fall of the year 1913, and in the spring of the year 1914, and in the fall of the year 1914, and in the spring of the year 1915, and in the fall of the year 1915, in disking ground and in threshing his rice crops."

It will be noted that no exception to this finding of the trial court was made. Therefore the above stands as one of the facts in this case, and from this finding it is clearly evident that Bancroft, after appellee had abandoned all efforts to make said machinery perform as set out in the contract, nevertheless continued to use the machinery for something over two years. Therefore it is a question, not so much of use of the machinery by the appellant, as it is the use of the machinery after he was satisfied that it would not accomplish the things specified in the contract, and that after Bancroft knew he was not satisfied, and became sure he could not be made so, he nevertheless continued to use the machinery for nearly three years. Consulting the authorities, we are of opinion that the assignment is not well taken, and that it must be overruled.

In the case of Hallwood Cash Register Co. v. Berry, 35 Tex. Civ. App. 554, 80 S. W. 857, the judge, rendering the opinion, says:

"The testimony shows that, just prior to the commencement of this suit, the defendant notified the plaintiff that he would not keep the property, and plaintiff must take it away. This

was not done, and defendant by his testimony continued to use it. It was the duty of defendant, as soon as he learned of the misstatements, to have rescinded the contract; and notice of such rescission must have been promptly given, and adhered to, in order to bind the parties thereto. *The continued use of the property for some thirty days after he had learned the facts would be a waiver of the right of rescission, even though notice of such rescission had been given.* (Italics ours.)"

The opinion continues further:

"In the case of Bassett v. Brown, 105 Mass. 551, it was held that a party, led into a contract by fraud, 'was entitled, upon discovering the facts, to elect whether to affirm the conveyance and retain the consideration, or to avoid it. * * * If after such knowledge he continues to deal with the property received as his own, he thereby affirms the contract by which he received it.' "

Continuing, the court says:

"The testimony of J. M. Berry, one of the appellees, brings this case clearly within the scope and application of the rule laid down in the decisions cited. He knew that the machine was worthless, and yet he used it after gaining such knowledge. * * * He knew as much the first day he used it as afterwards, according to his own statements. He used it for the purposes for which he had bought it, and thereby waived all right to rescind his contract of purchase."

Our attention has been called, also, to the case of Dodsworth v. Hercules Iron Works, 66 Fed. 483, 13 C. C. A. 552, in which the following language is used:

"The right of rejection was lost by the long-continued use of the machinery, which use was utterly inconsistent with a purpose to resort to the first remedy which was open to them, and consistent only with a claim of title and ownership."

In the case of Fox v. Wilkinson, 133 Wis. 337, 113 N. W. 669, 14 L. R. A. (N. S.) 1107, the following language is used:

"Defendants sold to plaintiffs a traction engine for $400 and an old horse power. By written agreement the purchasers were accorded 'ten days' trial on this engine, and said engine must do good work and be in good shape. If engine wheels and pinions break this year (1906) by cause of defect, same will be sent new.' Plaintiffs received the engine, had used it in threshing on some six or seven different days, but during a period of more than ten days after its receipt. An August 27th they had ascertained to their own satisfaction that the engine would not do good work, and had determined absolutely that they would not accept or keep it, and, about noon, on that day, sent word to the seller's agent to that effect. Thereafter, on the same day, and for about half of the following day, they continued to use the engine to run their threshing machine in order to finish up a job of threshing for a customer on which they were then engaged. Defendants, refusing to recognize the right of plaintiffs to rescind, got possession of the old horse power to which they were entitled under the terms of the trade. Plaintiffs, having demanded the same, brought replevin therefor. Upon trial the jury found a statutory verdict in replevin in favor of the plaintiffs, to the effect: (1) That plaintiffs were entitled to the possession of the horse power; (2) that defendants unjustly took and unjustly detained the same; (3) $60 value; and (4) plaintiffs' damage, $8. But, in response to two special questions submitted by the court of its own motion, they found: (1) That 'the plaintiffs determined absolutely, on August 27th, that they would not accept and keep the traction engine'; (2) that 'after they had thus determined they proceeded with the use of the engine to finish the threshing job at which they were then employed.' Upon this verdict the court denied plaintiffs' motion for judgment, and rendered judgments in favor of defendants for the recovery of the horse power or for its value, from which judgment the plaintiffs appeal."

On this state of facts the court says:

"One having a right of choice between two inconsistent positions, who exercises that choice, is finally concluded and confined to the rights and remedies appropriate to the position so chosen, and excluded from those consistent only with the repudiated one. Since such choice is merely mental, any unambiguous act consistent with one and inconsistent with the other of the elective positions will be deemed conclusive evidence of such election. Smeesters v. Schroeder, 123 Wis. 116, 101 N. W. 363. When an article delivered in attempted satisfaction of a contract of or for sale is, upon reasonable inspection, ascertained to vary from the requirements of such contract, the recipient becomes vested with such a choice. He may repudiate it entirely as not being that which he purchased, or he may accept it either as satisfying the contract completely, or, under some circumstances, as satisfying it only partially, so that he may recoup its insufficiency or defect against the purchase price, or recover damages therefor. * * * In the first case he refuses to become the owner of the article; in the latter he does become such. The two are inconsistent; hence, when he adopts either alternative, he can exercise no rights consistent only with the other position. Or, concretely, if, after ascertaining defects, he exercises dominion and avails himself of benefits to which he could be entitled only as owner, he so declares his election to become such that he cannot afterward deny the obligations of such position, or claim the immunities which would have resulted upon a rescission. * * * When a purchaser has the right to subject the article to trial, the mere use is, of course, ambiguous, for it may be for the purposes of trial; but when the test is complete so that the purchaser has, to his satisfaction, ascertained all that trial can teach him, and determined that the article does not satisfy the contract, then that element of ambiguity is eliminated in the construction of any subsequent acts of dominion or use. After that certainly any unnecessary application of the article to his advantage and benefit would in honesty be consistent only with a decision to become or continue owner."

Our attention also has been called to the case of Brown v. Foster, 108 N. Y. 387, 15 N. E. 608, and Palmer v. Banfield, 86 Wis. 441, 56 N. W. 1090. In the Brown Case we find the following language:

"Where the vendee, with full knowledge of its defects, keeps and uses machinery for nearly three months, without the consent of the vendor that it should be so used on trial, there is an acceptance of the machinery; and in an action by the vendee to recover for a breach of the contract to furnish the machinery, the vendor may recover, as a counterclaim, the agreed purchase price."

In the Palmer Case it is said:

"Defendant, to whom plaintiff had sold a harvesting machine, to be paid for if it should prove satisfactory, after using the machine for a day and a half decided to return it for defects, but, in order to finish his harvesting, used it the next day, and then offered to return it. Held an acceptance, by which defendant waived his right to return it."

We agree with the second proposition of appellant under his first assignment, which is:

"The use, by purchaser, of machinery bought on approval, such machinery to be paid for when purchaser is satisfied after a test that it will do a certain thing, is but a circumstance only, to be considered along with all the other fcats and circumstances in determining whether or not purchaser was, in fact, satisfied, and such use is not conclusive of satisfaction."

However, the view we take of the matter is that the assignment must be overruled in the light of the fact found by .the court that after the purchaser had become satisfied that no further effort would be made on the part of the vendor to make the machinery satisfactory, in other words, after he became assured that it was unsatisfactory, he nevertheless continued to use the same for the term of nearly three years, and under these circumstances was not entitled to rescind the contract; neither would he be entitled to be heard to say that after using the same for such length of time that he ought not to pay the purchase price.

[2] The second assignment of error is:

"The judgment of the court is contrary to the law and the evidence in this, to wit, because the evidence established that defendant's use of the machinery was consistent with defendant's belief that the plaintiff would yet make same plow to defendant's satisfaction, and defendant being at the time of such use by him, and after such use, ready and willing to pay plaintiff the amount agreed to be paid, when satisfied that said machinery would plow as specified in said order; and in that the evidence establishes that the use by defendant of the machinery for disking and threshing was with the knowledge of plaintiff, and with the acquiescence of plaintiff, and plaintiff made no protest or objection to such use by defendant."

The court's fourteenth finding of fact is as follows:

"I find that neither Emerson-Brantingham Implement Company nor Reeves & Co. ever consented that E. W. Bancroft could use said machinery for any purpose than the test to which he was to subject said machinery before he was to make final payment therefor, and that the use of said machinery by E. W. Bancroft in threshing his rice crops and in disking his lands was without the consent of either Reeves & Co. or Emerson-Brantingham Implement Company."

To this finding of the court there was no exception, and, of course, it is conclusive. Perhaps it might be well to recall that the court's sixteenth finding of fact was as follows:

"I find that there have been more than six days of favorable plow weather at the Bancroft farm in Orange county, Tex., since said machinery was delivered thereon, about the 1st of November, 1912, and that said E. W. Bancroft has retained said machinery for a longer period than a reasonable time in which said E. W. Bancroft was to test said machinery to the end that he might be satisfied that the same would successfully pull six 16-inch plows 6 inches deep in sod and nine 16-inch plows 3 inches deep in rice stubble."

The case, as made out by the record before us, clearly shows that there is no merit in the second assignment, and it is therefore overruled.

Appellant seems to have had a fair and impartial trial, the court filed findings of fact and conclusions of law, as requested, and there being no error in the action of the lower court, apparent in this record, which has been carefully considered, the cause is in all things affirmed. ·