**HARDING et al. v. WILCOX.   (No. 7998.)**

Court of Civil Appeals of Texas. San Antonio.
May 9, 1928.

Rehearing Denied June 13, 1928.

1. Boundaries ⟜3(6)—Court properly refused to locate common corner by running course and distance lines from descriptive objects, where possible to retrace original surveyor's footsteps from artificial objects and original location post.

Court did not err in refusing to locate a common corner between two shares of land by running course and distance lines from descriptive objects called for in exterior line of parent survey and calls in adjoining survey, when it was possible to retrace original surveyor's footsteps from existent artificial objects on the ground and original location post called for in field notes of original survey.

---

**2. Boundaries** ⊕⇒3(6)—**Location calls, identified on ground, must be followed, if possible.**

When location calls are identified on the ground, they must be followed, if possible, which may be done by reversing calls and running lines from any established or recognized location calls.

**3. Boundaries** ⊕⇒3(6)—**Boundary lines surveyor's footsteps must be followed, if possible, and lines located from well-known objects and landmarks established by him.**

In tracing boundary lines, the original surveyor's footsteps must be followed, if possible, and lines located from well-known objects and landmarks established by original surveyor, if any such can be located.

**4. Boundaries** ⊕⇒3(6) — **Descriptive calls should not be resorted to to establish disputed corner, where original survey, location call accepted as another corner, and senderos cut all around tract as lines were run still exist.**

Location calls should not be abandoned and descriptive calls resorted to to establish a disputed corner when original survey made on the ground, location call accepted by parties as another corner, and senderos or small roads cut all around tract as lines were run by original surveyors, are still in existence.

**5. Appeal and error** ⊕⇒263(2)—**Assignments attacking trial court's findings, supported by testimony and not attacked by exceptions or otherwise, will be overruled.**

Where trial court's findings, made on appellant's request in case involving boundary dispute, are supported by testimony, and appellants have not attacked them by exceptions or otherwise, nor requested additional findings, assignments attacking them will be overruled.

Appeal from District Court, Hidalgo County; Hood Boone, Judge.

Action by H. E. Wilcox against W. A. Harding and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Geo. P. Brown, of Edinburg, and Davis E. Decker, of Raymondville, for appellants.

A. G. Haigh and Cameron & Epperson, all of Edinburg, for appellee.

COBBS, J. This is an action in trespass to try title to 22.38 acres of land in Hidalgo county, instituted by appellee against W. A. Harding, S. L. Gill, W. A. Joplin, J. T. Fennell, Harding-Gill Company, and American Life Insurance Company of Detroit. All the defendants in the lower court answered by general demurrer, general denial, and plea of not guilty. Joplin filed a disclaimer as to share 5, for which appellee sued, except all of lots 2, 3, 4, 5, section 9, Harding-Gill subdivision, share 6, Las Mestemas grant, containing 227.88 acres of land. The land was sequestered by appellee. The court heard the case without a jury, and rendered a joint and several judgment against appellants for the title and possession of 22.38 acres of land, a portion of share. 5, as surveyed and partitioned in cause No. 1672, district court of Cameron county, in a case styled Bloomberg & Raphael v. John Young. We adopt the findings of fact as follows:

"That share No. 5 was a part of a large body of land containing in the aggregate 99,602 acres situated in Hidalgo and Cameron counties, and that a suit for the partition of the Mestenas grant, as such body of land was known, was filed in the district court of Cameron county some time during the year 1907 and was numbered 1672 on the docket thereof, and styled Bloomberg and Raphael v. John Young et al. In accordance with the agreement of the parties and as styled in the caption of the agreed judgment, the parties entered into an agreed partition of the said Mestenas tract. The caption of the agreed judgment reads as follows: 'For the purpose of avoiding further litigation, delay, and expense, and to adjust and settle all matters of difference between them and procuring if possible a decree of partition at the coming September A. D. 1907, term of the district court of Cameron county, Tex., in which the above numbered and styled cause is pending, the parties to said suit who now here sign this agreement do now here agree and each with the other as follows, to wit'—and under the fourth paragraph of said decree it was agreed 'that, after deducting the said two Manuel de la Vina leagues the remainder of said Mestenas' proper tract of land, sought to be partitioned herein and held in common as follows, to wit.' Paragraph 5: 'That said Manuel de la Vina two leagues of land being the remaining 8,856 acres of said Mestenas proper tract is owned by and shall be set apart, in severalty in one body, to the said Manuel de la Vina, his heirs or assigns, as hereinbefore located and held by them or to the said McAllen and Young as the law and the facts may be determined to be and it to said McAllen and Young. In addition to and as a part of theirs, said McAllen and Young's partition shares as hereinbefore decreed, 'I find that the said agreed decree of partition was signed by all of the parties interested in the ownership of said Mestenas tract on August 27, 1907. I further find that there was filed in the district clerk's office of Cameron county, Tex., on February 6, 1908, in cause No. 1672, the final decree of the district court of Cameron county which contained complete field notes of the surveyor to each share as agreed upon by the respective parties to said suit. I also find that share No. 5 was set apart to Juan M. de la Vina and Miguel G. de la Vina under the following language contained in the court's decree: And it is further ordered, adjudged, and decreed by the court that there be and is hereby set apart in severalty to the defendants, Juan M. de la Vina and Miguel G. de la Vina, that said tract of 5,856.8 acres meted and bounded as follows:' Then follows the field notes of the surveyor to the land so set apart.

"That share No. 5 in the agreed partition in said cause contained 3,000 acres of land and was set apart to W. F. Sprague, and that the defendants W. A. Harding, S. L. Gill, et al., are mesne grantees and purchasers of the said W. F. Sprague and hold and claim title under and through him.

---

⊕⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"That the plaintiff, H. E. Wilcox, purchased 700 acres of land out of the northwest corner of share No. 5 from the Vina heirs about two years prior to the time this suit was filed, in which he is plaintiff, and that the said Vina heirs were descendants of said Miguel G. de la Vina and Juan M. de la Vina, parties to the agreed partition, No. 1672, as above.

"That Martin Hanson, now deceased, was the surveyor and engineer who surveyed and subdivided the entire Mestenas tract of 99,602 acres and cut it up into various shares, the field notes of which are given in the said decree of partition, and that M. C. Hanson, his son, was his instrument man and assisted him in this survey.

"That the surveyor cut senderos on three sides of share No. 5, marking the lines which he had surveyed, and that the De la Vinas built a fence in the senderos cut by Hanson on the east and south lines and for approximately a mile and half along the north line of share No. 5, commencing at the northeast corner of said share and running to a point in said north line where, by running the fence almost due northward for a distance of approximately 1,000 feet, they connected up with the Parada pasture fence built by W. F. Sprague several years before that time. I find that the Vinas built the fence aforesaid in the year 1910, and that said fence they built was continuous and completely inclosed share No. 5.

"That the mesquite post marked 'J. V.' found, and now in existence, at the northeast corner of share No. 5, marks the original location fixed for the northeast corner of share No. 5 by the surveyor Martin Hanson at the time he originally surveyed said share in 1907-08, and that said post was accepted by both plaintiff and defendants herein as marking the location of the northeast corner of this tract.

"That the field notes of each tract or share, as contained in the agreed partition decree in cause No. 1672, are complete and sufficient in themselves, and that share No. 5 can be located definitely on the ground from the field notes given in the said decree, together with the northeast corner post established by Hanson and still in existence, and the line fence built by the De la Vinas in 1910 along the entire south and east lines and approximately one-half the entire distance along the north line of share No. 5, which line fence is continuous, together with the northeast corner post mentioned in paragraph 6 hereof and the old line fence mentioned in paragraph 5 hereof.

"That the portion of the fence running in a westwardly direction following a course of 78° 71' east called for by the field notes in the original agreed partition decree is located upon the ground and was built within the original sendero cut by Martin Hanson at the time he made the survey for approximately a mile and one-half westward from the said northeast corner, and that a line projected thence westwardly to the intersection of the road follows the line of the original sendero and is on the line of the course called for of 78° 17' west, and that such line projected following the said course would intersect the west line of the Mestenas tract in approximately the location and the point fixed by Martin Hanson for the northwest corner of share No. 5.

"That taking a course of 78° 17' west from the northeast corner post as fixed by mesquite marked 'J. V.' on the ground to its intersection with the Mestenas tract west line fixes the approximate location of the northwest corner of share No. 5."

While the suit was one in trespass to try title, it developed in a contention as to boundaries, and really should have been pleaded as such by setting out and describing the boundary lines as contended for. It is of much benefit to have maps or plats descriptive of the land in controversy set out in the record. Provident Nat. Bank v. Webb, 60 Tex. Civ. App. 321, 128 S. W. 426. We find a map made by the witness H. E. Wilcox, as explanatory of his testimony and showing the situation of the land as follows:

[1, 2] The most unsatisfactory of all calls in a survey are descriptive calls for course and distance and the court did not err in refusing to locate a common corner between two shares by running course and distance lines from descriptive objects called for in an exterior line of the so-called parent survey and calls in an adjoining survey, when it was possible from existent artificial objects on the ground and an original location post called for in the original field notes of the original survey to retrace the footsteps of the surveyor. For instance, when location calls are identified on the ground, they must be followed, if possible, and that may be done as well in running lines by reversing the calls and running from any established or recognized location calls.

[3] In tracing lines, the footsteps of the original surveyor must be followed if possible so that the common boundary lines between

shares 5 and 6 should be located from well-known objects and landmarks on the ground, established by the original surveyor, if such can be located.

[4] It must be remembered in the earlier days, when lands were of little value and the country sparsely settled, it was not only difficult for surveyors to run out lines on the ground, but dangerous to do so, on account of hostile Indians (none, however, shown to be thereabout at that time). Then, too, their instruments were poor and assistance inadequate. Many of the field notes of surveys at that time were written in the office of the surveyor, and were known as office surveys. They were good enough if they could be identified from calls in the field notes and found and located on the ground. So it will be seen that few original marks were made on the ground in these vast blocks of surveys at that time, and to locate them they must get their connection sometimes from distant points called for in the field notes. Now, when more perfect instruments are used and modern methods are in use, more accuracy is shown. There is no reason to abandon location calls and resort to descriptive calls, the most uncertain of all, outside of share 5 itself to establish the northwest corner of the north line of the same, because it is shown that there is evidence that the survey made on the ground is still in existence. The northeast corner of share No. 5, a location call, is still in existence, marked "J. V." Both parties accept that as the northeast corner of share 5. Senderos, which means small roads about 5 feet wide, were cut all around the road, as it was the only way to get about, and a post was put at each corner. This was done in 1907 and 1908. These senderos were cut out all around the tract as the lines were run. It was shown that Hanson, the surveyor who located the northwest corner, 20 years later was able to find and identify the corner which comes with much persuasive force to establish the work. The testimony of G. Hanson, the surveyor who located or assisted in locating the line, said:

"When we made the survey of share 5 for the Vinas, as I remember, I think the first line we run was the dividing line between he and Sprague. When we run the distance from west to east to get Vina his land, we started a sendero south and then backed up and did not run that sendero line. The reason for that, as I remember, was that the Vina land was to be apportioned to them in a square, and when we run the east line it was quite a distance for this square, and we turned south so the lands would be left in the Bata pasture. Then we decided to go further east and take in that. At the same time the distance north and south would be less. * * * Then we backed up and abandoned that east line, the one running south, and extended our east line to the east."

When you find any well-established corner on the ground or other natural or artificial lines as senderos running through the land, you have the basis for finding and locating the land in controversy.

Appellee has well said, with which we agree:

"Appellants did not attempt to account for the old mesquite post marked 'J. V.' in the northeast corner of share 5, but accepted it as their northeast corner post, nor the mile and a half of fence running westward from that post, and which fence checks almost exactly with the bearings given in the original field notes. The error of the original surveyor, Hanson, in locating share 5, for such it apparently is if we rely upon the field notes given in the partition decree, as we believe we have pointed out to the court in our argument under counter proposition No. 1, occurred in chainage when share 5 was originally laid out. It was an allowable error 20 years ago when land was selling in that vicinity for 75 cents and a $1 an acre, and such an error could easily creep in in measuring lines over 3 miles long.

"Appellants say that, if the Wilcox northwest corner is adopted and the lines of share 5 are run out in accordance with the location of the Vina fence, that the Vinas will lose a great deal of land. We say that that acreage was lost to them 20 years ago, and to-day they cannot help but be satisfied with what they have. If the Card northwest corner be adopted, Wilcox and the Vinas will lose approximately that much additional acreage, unless they are permitted to change their southwest corner and fence and move it south into share 1 the distance taken from them on the north. This they cannot do in this lawsuit, nor could they do it in any other proceeding unless the adjoining owners in share 1 agree to it. The Vinas would not only therefore stand to lose that additional land, but would also be liable on their general warranty to Mr. Wilcox for the twenty-two and a fraction acres of land involved in this suit."

[5] In this case the trial court has carefully gone over the evidence and found for the appellee and it is well supported by the testimony, which has rendered our labors very light, for the evidence supports the findings. The findings were made in response to appellants' request. Appellants have not attacked them by exceptions or otherwise, nor made any request for additional findings. That being the status of the record appellants' assignment attacking such findings will be overruled. Anyway the testimony supports the court's findings. Celaya v. City of Brownsville (Tex. Civ. App.) 203 S. W. 153; Bancroft v. Emerson (Tex. Civ. App.) 194 S. W. 991.

Taking the judgment of the trial court together with the field notes and bearings called for therein, any competent surveyor would have but little if any difficulty in establishing on the ground the boundaries called for and thus establish the fence known as the Parada pasture fence along his north line, from which appellants removed to a line established by Card.

The judgment of the trial court is affirmed.